UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SFR SERVICES, LLC,

    Plaintiffs,

v.                                                                            Case No: 8:22-cv-109-KKM-SPF

UNITED PROPERTY & CASUALTY
INSURANCE COMPANY, FKS
INSURANCE SERVICES, LLC,
PROPERTY LOSS SPECIALIST, LLC,
and MID-AMERICA CATASTROPHE
SERVICES, LLC,

    Defendants.
_____

# ORDER

SFR Services ("SFR") sues United Property and Casualty Insurance Company ("UPC"), FKS Insurance Services, LLC ("FKS"), Property Loss Specialist, LLC ("PLS"), and Mid-America Catastrophe Services, LLC ("Mid-America") (collectively "Defendants") over their handling of insurance claims arising from Hurricane Irma. SFR alleges that Defendants cooperated in an "unlawful and unethical scheme" to underpay and deny claims submitted to UPC for damage caused by the hurricane, and that this scheme amounted to unlawful racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). SFR also alleges various state law claims including

breach of contract and violations of the Florida Unfair Insurance Trade Practice Act ("FUITPA") against UPC, and fraud against all Defendants. Because the McCarran-Ferguson Act preempts SFR's RICO claim and because SFR fails to plead its RICO claim in accordance with the requirements of Federal Rule of Civil Procedure 9(b), the claim is dismissed with prejudice. The Court declines to retain supplemental jurisdiction over the remaining state law claims.

I. BACKGROUND[1]

In the wake of Hurricane Irma, SFR contracted with Florida homeowners to perform repairs. (Doc. 88 ¶¶ 2, 3.) Under the contract, homeowners assigned SFR their rights to benefits under their insurance policies and SFR "step[ped] into the shoes of the policyholder" to negotiate claims with the insurance companies. (*Id.* ¶2; *Id.* at 49.) Two hundred of these homeowners had home insurance policies with UPC. (*Id.* ¶ 5.)

SFR alleges that UPC, together with the adjusters FKS, PLS, and Mid-America, conspired to deny or underpay legitimate insurance claims brought by SFR for damages caused by the hurricane. (*Id.* ¶¶ 8–10, 29.) As part of the scheme, UPC instructed the adjusters to "modify reports to give UPC a 'factual basis' to deny coverage." (*Id.* ¶ 31.) In some cases, UPC commanded adjusters to "add language to their reports which was

---

[1] The Court accepts all the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

inaccurate and outright false." (*Id.* ¶ 32.) FKS told field adjusters in a text message not to estimate damages for late-reported or reopened UPC claims. (*Id.* ¶ 46.) And Mid-America told field adjusters in an online meeting not to complete full inspections for late-reported UPC claims because UPC was going to "deny everything." (*Id.* ¶ 58.)

One field adjuster for PLS claims that a UPC desk adjuster instructed him to add language to a report indicating "[t]hat no wind damages were observed upon inspection," even though he told the desk adjuster "[o]n multiple occasions" that such a statement would be incorrect. (*Id.* at 129–30.) The same field adjuster claims field adjusters were often asked, and he was personally asked over 180 times, by UPC and PLS to "go against their statutory duties to handle claims in good faith with the policyholders." (*Id.* ¶ 38–39.)

Another adjuster claims he "was required to modify" his report, "[a]t UPC's instruction," to state that a roof sustained $3,354.34 in damages instead of his original estimate of $59,037.30. (*Id.* ¶ 41–42.) Another testifies that he handled over 150 claims for UPC and Mid-America where he was instructed not to complete a complete damage estimate. (*Id.* ¶ 52.)

SFR maintains that these misrepresentations were "not limited only to a few specific claims[;]" rather, "UPC has artificially decreased estimates, or modified estimates [so] as to pretextual[ly] warrant a denial of coverage, *in hundreds of instances* for which SFR has been assigned the benefits." (*Id.* ¶ 44 (emphasis added).) SFR further alleges that these

3

misrepresentations were part of a scheme by all Defendants to deny or decrease payouts of claims "throughout Florida." (*Id.* ¶ 56.)

SFR filed its first complaint on January 13, 2022, naming UPC, FKS, and PLS as defendants. (Doc. 2.) The complaint included a RICO claim and a fraud claim against all three defendants, a breach of contract claim against UPC, and a single count alleging multiple violations of FUITPA by UPC. The Court struck this first complaint as an impermissible shotgun pleading on January 14, 2022. (Doc. 11.) Specifically, the Court noted that SFR did not separate its FUITPA claims into separate counts as required by Federal Rule of Civil Procedure 8. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320–23 (11th Cir. 2015). The Court cautioned that the pleading as written did not give the existing defendants "adequate notice of the claims against them [or] the grounds upon which each claim rests." (Doc. 11 (quoting *Weiland*, 792 F.3d at 1323).)

SFR then filed an amended complaint, splitting the FUITPA violations into five separate counts, which the three named defendants individually moved to dismiss. They alleged, among other things, that the complaint failed to state a RICO claim with particularity, that the RICO claim was barred by the McCarran-Ferguson Act, and that the complaint still constituted a shotgun pleading. (Doc. 48; Doc. 49; Doc. 52.) In August, SFR moved to amend the complaint a second time to add Mid-America as a party. The Court granted that motion—as well as a subsequent motion to amend to properly name

4

Mid-America—and denied the pending motions to dismiss as moot. (Doc. 83; Doc. 87.) Defendants now move to dismiss this third amended complaint, making similar arguments to those espoused in the previously denied motions. (Doc. 91; Doc. 92; Doc. 94; Doc. 99.)

## II.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Additionally, plaintiffs face a heightened pleading standard when alleging fraud or mistake and "must state with particularity the circumstances constituting fraud or

5

mistake." FED. R. CIV. P. 9(b); s*ee also Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (applying the heightened Rule 9(b) standard to civil RICO claims). Under this rule, a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)). And these facts must be alleged "with respect to each defendant's participation in the fraud." *Id.*

When considering a motion to dismiss, the Court accepts all the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

### III. ANALYSIS

UPC, PLS, FKS, and Mid-America move to dismiss the Third Amended Complaint. (Doc. 91; Doc. 92; Doc. 94; Doc. 99.) Defendants allege that the RICO and state law fraud claims are not pleaded with the requisite particularity required by Rule 9(b) and that SFR fails to allege a RICO enterprise or pattern of racketeering. UPC and FKS also argue that SFR's RICO claim is barred by the McCarran-Ferguson Act. In addition, UPC claims that the breach of contract claim constitutes impermissible claim splitting and

6

that SFR did not comply with the required procedural rules to bring the FUITPA claims. PLS, FKS, and Mid-America further claim that the complaint is a shotgun pleading because it is "replete with unnecessary information about non-parties." (Doc. 94 at 8.) Finally, PLS argues that if the RICO claim is dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining claims.

### A. SFR fails to state a plausible RICO claim

SFR alleges that all defendants were engaged in an unlawful scheme to deny valid insurance claims resulting from damage from Hurricane Irma. SFR claims that the scheme constituted an unlawful racketeering enterprise by which UPC worked with the defendant adjusters, using mail or wires, to create reports that misrepresented the amount of damage caused by the hurricane, so that UPC could deny or underpay claims. (Doc. 88 ¶ 29–31.)

### 1. SFR's RICO claim is barred by the McCarran-Ferguson Act

UPC and FKS argue that SFR's RICO claim is barred by the McCarran-Ferguson Act. The Act provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. 1012(b). Thus, the Act "precludes application of a federal statute in face of state law" when three conditions are met. *Humana v. Forsyth*, 525 U.S. 299, 307 (1999). First, the federal statute must not "specifically relat[e] to the business of insurance." *Id.* (alterations in

7

original) (quotation omitted) Second, the state law must be "enacted . . . for the purpose of regulating the business of insurance." *Id.* (alterations in original). Third, application of the federal law must "invalidate, impair, or supersede" the state law. *Id.* These terms, as noted by the Supreme Court, are given their ordinary meaning. *Id.* Accordingly, "invalidate" means "to render ineffective, generally without providing a replacement rule or law" and "supersede" means to "displace (and thus render ineffective) while providing a substitute rule." *Id.* (quotations omitted) "Impair," in this context, means to "frustrate any declared state policy or interfere with a State's administrative regime." *Id.* at 310.

Here, "RICO is not a law that 'specifically relates to the business of insurance.' " *Id.* Preemption consequently turns on whether application of the RICO statute to this case invalidates, impairs, or supersedes Florida insurance law.

Florida law provides a civil remedy for various claims against insurers, including making a "material misrepresentation . . . to an insured or any other person having an interest in the proceeds payable under [a policy], for the purpose . . . of effecting settlement of such claims . . . on less favorable terms than those provided in [the policy]." § 624.155(1)(a), Fla. Stat.; *Id.* § 626.9541(1)(i). But Florida conditions this private right of action on notice to the insurer and state and a sixty-day waiting period before suit may be filed. *Id.* § 624.155(3)(a)–(c). If the state determines that the violation is corrected within

8

the sixty-day period, "[n]o action shall lie." *Id.* Additionally, class action suits are not authorized under the statute. *Id.* § 624.155(6).

That said, application of the RICO statute does not supersede or invalidate Florida insurance law because it would not render Florida insurance law ineffective. 525 U.S. at 307–08. Unlike the Nevada law at issue in *Forsyth*, however, application of RICO does *impair* Florida insurance law in this case. In *Forsyth*, the Court noted that Nevada's law, like Florida's, provided statutory and common law remedies for insurance fraud, and does not exclude the application of other state laws. *Id.* at 313; § 624.155(7), Fla. Stat. The Court further noted that Nevada never argued that application of RICO would frustrate any policy or interfere with its administrative regime. *Id.* at 314. But here, RICO *does* frustrate a state policy and interfere with Florida's administrative regime. SFR's RICO claim alleges that Defendants perpetuated a scheme to "provide the insureds with false reports for the purpose of underpaying and denying their valid claims." (Doc. 88 ¶ 70.) This is the exact type of conduct contemplated by Florida law, which provides a statutory right of action when insurers make "misrepresentations . . . for the purpose . . . of effecting settlement . . . on less favorable terms than those provided in [the policy]." § 626.9541(1)(i), Fla. Stat. Further, unlike RICO, Florida's law requires that certain procedural requirements be met before such a claim may be brought. Florida's policy is to require notice and a sixty-day waiting period for the state to investigate and for the insurer

9

to cure the misrepresentation, presumably to promote settlement of these types of insurance disputes without court intervention. RICO has no such waiting period before a suit can be brought for these same allegations. Allowing these claims to be brought in a federal RICO action therefore frustrates this aspect of the state's insurance regime.

Other district courts have reached similar conclusions. *See, e.g., Kondell v. Blue Cross & Blue Shield of Fla., Inc.*, 187 F. Supp. 3d 1348, 1361–62 (S.D. Fla. 2016) (Rosenberg, J.) (determining that plaintiff's class action RICO claim alleging fraud by an insurer was barred under McCarran-Ferguson because Florida law does not allow those claims to be brought as a class action); *Weinstein v. Zurich Kemper Life*, No. 01-6140-CIV, 2002 WL 32828648, at *3 (S.D. Fla. Mar. 5, 2002) (Dimitrouleas, J.) (determining that a RICO claim alleging conduct similar to that proscribed in section 626.9541 would impair Florida law because Florida's sixty-day notice requirement constitutes "the declared state policy in Florida regarding the ability to sue insurance companies for unfair or deceptive trade practices").

Because Plaintiff's RICO claim frustrates section 624.155's procedural requirements, it is barred by the McCarran-Ferguson Act.

### 2. SFR does not plead its RICO claim with particularity

Even if SFR's RICO claim was not barred under the McCarran-Ferguson Act, it is not sufficiently pled with particularity. SFR alleges that the Defendants violated 18 U.S.C.

10

§ 1962(c), which states that "[i]t shall be unlawful for any person employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." To plead a civil RICO cause of action, a plaintiff "must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity . . . which (5) caused (6) injury to the business or property of the plaintiff." *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). SFR must allege sufficient facts to demonstrate that Defendants engaged in "at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d at 1291. Here, SFR alleges mail and wire fraud as predicate racketeering acts, which requires SFR to show Defendants "(1) intentionally participate[d] in a scheme to defraud another of money or property and (2) use[d] the mails or wires in furtherance of that scheme." *Id.* at 1290.

To state a claim for relief alleging a civil RICO violation predicated on fraud, a plaintiff must meet the particularity requirements of Rule 9(b). *Id.* (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)). Therefore, SFR must allege precise misrepresentations made, when they were made and who made them, the manner in which SFR was misled by them, and what Defendants gained. *Id.*

11

Additionally, a plaintiff cannot merely "lump together" defendants in an allegation of fraud; for, courts "will not scour the allegations of a complaint to link unnamed defendants to particular acts of fraud without some reasoned and plausible way to do so." *See Cisneros*, 972 F.3d at 1217.

SFR fails to meet these particularity requirements. SFR alleges that "Defendants engaged in a pattern of racketeering activity, which involves a fraudulent scheme and conspiracy to provide the insureds with false reports for the purpose of underpaying and denying their valid claims." (Doc. 88 at ¶ 70.) SFR further alleges that "Defendants specifically instructed desk adjusters to modify the estimates created by field adjusters to decrease estimates" and that UPC "commanded [field adjusters] to add language to their reports which was inaccurate and outright false." (Doc. 88 at ¶ 31–32.) At various points throughout the complaint, SFR also claims that field adjusters were "instructed" and "commanded" to include misrepresentations in their reports. But SFR mostly fails to allege any specific misrepresentations actually *made* by Defendants, let alone who made them, how they misled SFR, and how they benefited Defendants.

SFR details texts and phone calls by FKS and UPC and the online meeting hosted by Mid-America where adjusters were told not to complete full estimates because claims would be denied, which satisfies the second prong of wire fraud. But neither of these allegations satisfy the first prong because in neither instance does SFR detail specific

12

misrepresentations, let alone who the misrepresentations were made to or how they misled SFR.

The closest SFR comes to making specific allegations is when it claims that one field adjuster for PLS advised UPC that the statement "no wind damages were observed upon inspection" was incorrect, but that the statement was still included in a report. (Doc. 88 at ¶ 34.) In another instance, SFR alleges that another PLS adjuster's report was changed to reflect a lower damage estimate than he originally wrote up. (Doc. 88 at ¶¶ 41–42.) But even if these are enough to allege the "precise statements" and "misrepresentations" made, they still fail to satisfy the requirements of Rule 9(b). SFR does not explain the time or place the reports were made, let alone how they misled SFR. Further, it is unclear whether these reports were sent to SFR, or one of the insureds who assigned their benefits to SFR, or simply a third party insured by UPC unrelated to this action.

Finally, SFR fails to connect at least two of the Defendants to these more specific misrepresentations. *See Cisneros*, 972 F.3d at 1217. Both adjusters who detailed specific misrepresentations made in their reports worked for UPC through PLS. SFR fails to explain how FKS and Mid-America were tied to those specific misrepresentations, so even if these two misrepresentations met the requirements of Rule 9(b), they would only support a claim against UPC and PLS.

13

Therefore, SFR has failed to plausibly allege a RICO claim with the particularity requirements in Rule 9(b).[2]

### B. The Court will not exercise supplemental jurisdiction over the remaining claims

This Court "may decline to exercise supplemental jurisdiction" where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1569 (11th Cir. 1994) (noting that district courts have discretion to decline to exercise supplemental jurisdiction after the dismissal of the underlying federal claims).

Because the Court has already dismissed the RICO claim, the only remaining claims in this action are SFR's fraud claim against all Defendants and its breach of contract and FUITPA claims against UPC. In the absence of any remaining basis for federal jurisdiction, the Court elects not to exercise supplemental jurisdiction over the remaining state law claims and dismisses them.

---

[2] Because the Court determines SFR has not pled two racketeering acts with particularity, it will not address the other elements necessary to plausibly allege a RICO violation, including whether SFR has plausibly established a RICO enterprise or whether the racketeering activity amounted to criminal conduct of a continuing nature. *See Cisneros*, 972 F.3d at 1216.

IV. **CONCLUSION**

SFR's RICO claim is barred by the McCarran-Ferguson Act and not pled with the requisite particularity. Moreover, the Court declines to exercise supplemental jurisdiction over the remaining claims.

Accordingly, the following is **ORDERED:**

1. Defendants' Motions to Dismiss (Doc. 91; Doc. 92; Doc. 94; Doc. 99) are **GRANTED**.

2. SFR's Complaint is **DISMISSED with prejudice.**

3. The Clerk is directed to **TERMINATE** any pending deadlines and **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, on October 12, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record